UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK CROUCH,

        Plaintiff,

v.

EMPIRE CAPITAL NETWORK LLC,
MIGUEL JOSEPH GUZMAN,
MARCO D. MCKITHEN,
UNITED ASSET MANAGEMENT GROUP LLC,
and SAMUEL P. DIPALMA JR.,

        Defendants.

_____/

COMPLAINT

## I.    Introduction

1.      Plaintiff Mark Crouch is a victim of credit identity theft. This is an action for damages brought against debt collectors for violating the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, Driver's Privacy Protection Act of 1994 ("DPPA"), 18 U.S.C. § 2721 *et seq.,* Michigan Regulation of Collection Practices Act ("MRCPA"), M.C.L. § 445.251 *et seq.,* and Michigan Occupational Code ("MOC") M.C.L. § 339.901 *et seq.,* and for invading plaintiff's privacy.

2.      Defendants, along with other entities and individuals to be identified in discovery, are involved in a fraudulent, criminal and ongoing scheme whereby they have conspired to use false representations and threats to coerce the payment of money from consumers across the country who allegedly have failed to repay payday loans. This scheme, operated by defendants as

1

well as many other entities located in and around Miami Florida, Atlanta, Georgia, Buffalo, New York, Charlotte, North Carolina and Rock Hill, South Carolina, is based on the use of a script, sometimes known as "The Shakedown" or "The Shake," that includes variations of the following: The caller calls from a blocked number or uses a telephone number with the consumer's area code, pretends to be a local process server, states to the consumer that "charges" have been filed against the consumer for "breach of contract" or "defrauding a financial institution" and represents that the caller is attempting to locate and serve the consumer with a summons and complaint that has been filed in court against the consumer. The caller suggests that the charges might not be pursued if the consumer calls a toll-free number in the next several hours and arranges to pay money to the fake process server's "client" (which often has a name designed to sound like that of a law firm). Usually, the threatening messages are left indiscriminately (and unlawfully) with the consumer's relatives, employer and other third parties, in order to increase the likelihood of a response. When the consumer responds to the call, the collector (often posing as an attorney or paralegal) accuses the consumer of misdeed, makes false threats of pending litigation (and sometimes prosecution), and demands payment of the alleged debt. Of course, no lawsuit has been filed. Often the debt is time-barred, the consumer's personal, financial and account information will have been stolen and will have been sold and resold to multiple parties, such that the caller no longer owns or otherwise has any right to collect the account, and/or the loan has been repaid and there is no debt owed. When sued for violating the FDCPA, most of the entities default, accumulate default judgments, and continue to operate under a progression of limited liability companies, with listed "business" addresses that are nothing more than rented private mail boxes.

2

3.      On November 4, 2015, the Federal Trade Commission and other law enforcement authorities around the country announced the first coordinated federal-state enforcement initiative targeting deceptive and abusive debt collection practices. The "Operation Collection Protection" initiative is described by the FTC as a nationwide crackdown by federal, state, and local law enforcement authorities against collectors who use illegal tactics such as harassing phone calls and false threats of litigation, arrest, and wage garnishment. The initiative targets debt collectors who attempt to collect so-called phantom debts – phony debts that consumers do not actually owe. See www.ftc.gov/news-events/press-releases/2015.

4.      Even more recently, the federal government has begun to criminally indict individuals involved in the type of scam that is described in this complaint. See, for example, the forty-one-count indictment filed on March 3, 2016 by the United States of America against Alan Ceccarelli, in the United States District Court, Western District of New York (Buffalo), Case No. 1:16-cr-00024-EAW-HKS-1, 122, with charges that include Wire Fraud and Aggravated Identity Theft.

**II.     Jurisdiction**

5.      This Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), 18 U.S.C. § 2724(a) (DPPA), and 28 U.S.C. § 1331. This Court has supplemental jurisdiction regarding plaintiff's state law claims under 28 U.S.C. § 1367. Venue in this judicial district is proper because the pertinent events took place here.

**III.    Parties**

6.      Plaintiff Mark Crouch is an adult, natural person residing in Kent County, Michigan. Mr. Crouch is a "consumer" and "person" as the terms are defined and used in the

3

FDCPA. Mr. Crouch is a "consumer," "debtor" and "person" as the terms are defined and used in the MRCPA and MOC.

7.  Defendant Empire Capital Network LLC ("Empire"), also doing business under the unregistered names "ADC," "Alternative Dispute Center," "National Mediation Group," and "IDR," is an active Florida limited liability company. The Articles of Organization for Empire filed August 21, 2017 list a principal place of business at 610 SW 34 St., Ste. 202, Ft. Lauderdale, Florida 33315, and name as Managing Members for Empire, defendants Miguel Joseph Guzman and Marco D. McKithen. The registered agent for Empire is Business Filings Incorporated, 1200 South Pine Island Road, Plantation, FL 33324. Empire uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Empire regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Empire is a "debt collector" as the term is defined and used in the FDCPA. Empire is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, Empire is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

8.  Defendants Miguel Joseph Guzman and Marco D. McKithen have maintained an internet domain, www.empirecapitalnetwork.com, which was created on September 1, 2017, through GoDaddy.com, LLC, by Mr. McKithen, 208 Wimbledon Lake Drive, Plantation, Florida 33324, telephone number 716-313-6005, email address marco.mckithen@gmail.com. Mr. McKithen provided GoDaddy with a business address of 1100 Park Central Boulevard South, Suite 2450, Pompano Beach, Florida 33064. Mr. McKithen later revised his contact information to use his alias, Philip Johnson. Mr. McKithen paid GoDaddy with his Visa credit card ending in

5273. The domain links to an active internet website maintained by defendants, which provides

the following contact information: Empire Capital Network LLC, 610 SW 34th Street, Suite 202,

Fort Lauderdale, Florida 33315, 877-350-2921, info@empirecapitalnetwork.com. The website

states in part: "We specialize in operating call-centers. With over 20 years of combined

experience, one thing's for sure is that we can help your company. Whether struggling or not, we

will help you generate more revenue. . . . Can your agency use better account, or are in need of a

steady supply? We have developed relationships with the largest Debt Buyers in the country.

Simply put, we have access to many product lines of account receivables and are looking to

place with the right qualified agencies." Defendants use the domain to communicate by email

with consumers, and among themselves.

9.      Defendants Miguel Joseph Guzman and Marco D. McKithen have maintained

another internet domain, www.nationalmediationgroup.com, which was created on September 1,

2017, through GoDaddy.com, LLC, by Mr. McKithen, 208 Wimbledon Lake Drive, Plantation,

Florida 33324, telephone number 716-313-6005, email address marco.mckithen@gmail.com.

Mr. McKithen provided GoDaddy with a business address of 1100 Park Central Boulevard

South, Suite 2450, Pompano Beach, Florida 33064. Mr. McKithen later revised his contact

information to use his alias, Philip Johnson. Mr. McKithen paid GoDaddy with his Visa credit

card ending in 5273.

10.     Defendants Miguel Joseph Guzman and Marco D. McKithen have maintained

another internet domain, alternativedcenter.com, which was created on September 2, 2017,

through GoDaddy.com, LLC, by Mr. McKithen, 208 Wimbledon Lake Drive, Plantation, Florida

33324, telephone number 716-313-6005, email address marco.mckithen@gmail.com. Mr.

5

McKithen provided GoDaddy with a business address of 1100 Park Central Boulevard South, Suite 2450, Pompano Beach, Florida 33064. Mr. McKithen later revised his contact information to use his alias, Philip Johnson. Mr. McKithen paid GoDaddy with his Visa credit card ending in 5273. On September 21, 2017, Mr. McKithen sent a request to GoDaddy to create the email address info@alternativedcenter.com. The domain previously linked to a now defunct website maintained by defendants, which stated in part: "Although we are a new organization, our management and operations experience has over 24 years of combined debt collection, restoration and mediation experience." Defendants have used the domain to communicate by email with consumers, and among themselves.

11.     Empire and its employees and agents use multiple telephone numbers when conducting their unlawful debt collection operation, including 716-313-6005 (defendant Marco D. McKithen's personal cellular telephone number), 877-350-2921, 877-350-5022, 944-228-4398 and 954-232-4337 (defendant Miguel Joseph Guzman's personal cellular telephone number). The Responsible Organization for 877-350-5022 is Level 3 Communications, LLC, which in turn leases the telephone number to voice over internet provider named Vaspian, LLC. On August 31, 2017, Mr. Guzman (as an "Officer" of Empire) and Mr. McKithen (as "Director of Operations" for Empire) signed a twelve-month contract with Vaspian, LLC for VOIP services, which included the lease of five telephones and related equipment, along with five toll free telephone numbers, including telephone number 877-350-5022.

12.     Empire and its employees and agents use multiple aliases when communicating with consumers, including: Amanda Fields, Linda Lawson and Philip Johnson (an alias used by defendant Marco D. McKithen).

6

13.     Empire directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Mr. Crouch that are described in this complaint.

14.     Defendant Miguel Joseph Guzman, also known as Joseph Guzman, also known as Miggz Guzman, age 32, is a natural person, purportedly residing at 2360 SW 18th Avenue, Fort Lauderdale, Florida 33315-1812, 2346 Ballard Cove Road, Kissimmee, Florida 34758-2251, or 95 Helen Avenue, Apartment 1, Buffalo, New York 14219-1617. Mr. Guzman is an owner, officer, member, manager, employee and agent of Empire. Mr. Guzman sometimes uses the email address guzman.miguel85@gmail.com to conduct his unlawful debt collection scam. Mr. Guzman uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Guzman regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr. Guzman is a "debt collector" as the term is defined and used in the FDCPA. Mr. Guzman is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, Mr. Guzman is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

15.     Mr. Guzman is a convicted felon and drug trafficker. See *United States of America v. Miguel Guzman,* United States District Court, Western District of New York (Buffalo), Case No. 1:11-cv-00345-RJA-1. On April 2, 2012, Mr. Guzman was sentenced to three years of probation, including substance abuse testing/treatment. On May 10, 2012, Mr. Guzman was arrested in the City of Buffalo for Disorderly Conduct and Drinking to Excess. On May 15, 2012, the court modified Mr. Guzman's sentence, imposing a three-month curfew prohibiting Mr. Guzman from entering any bar, club or casino, ordering Mr. Guzman to abstain from consuming alcohol, and ordering Mr. Guzman to wear a tether for electronic monitoring.

7

Despite the foregoing, on May 31, 2012, Mr. Guzman's probation officer observed Mr. Guzman consuming alcohol at Mickey Rats Bar in Angola, New York. On June 8, 2012, the court again modified Mr. Guzman's sentence, ordering Mr. Guzman to home detention and under tether for the remainder of his three-month curfew.

16.     Mr. Guzman while residing in Buffalo, New York was the managing member of a collection agency named Northeast Receivables Management, LLC, a New York limited liability company, formed on or about October 3, 2014. The internet website for the Better Business Bureau for Upstate New York contains numerous consumer complaints regarding Mr. Guzman and his company, detailing the same unlawful debt collection tactics that are described in this complaint. The BBB, on a scale of A to F, gives Mr. Guzman and his company a rating of "F."

17.     Mr. Guzman previously was employed as a debt collector for an entity named Audubon Financial Bureau, LLC ("Audubon"). On March 19, 2013, a lawsuit was filed against Audubon, Mr. Guzman, and others, alleging that the defendants had engaged in the same unlawful debt collection tactics that are described in this complaint. See *Sweet et al. v. Audubon Financial Bureau, LLC et al.,* United States District Court, District of New Mexico, Case No. 1:13-cv-00258-BRB-WPL.

18.     Mr. Guzman (a) created the collection policies and procedures used by Empire and United, and their employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of Empire, (c) oversaw the application of the collection policies and procedures used by Empire and its employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by Empire and United, and their employees and agents to collect debts from consumers, including

8

the tactics and scripts that were used to attempt to collect an alleged debt from Mr. Crouch as alleged in this complaint, (e) ratified the unlawful debt collection practices and procedures used by Empire and United, and their employees and agents in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by Empire and United, and their employees and agents in attempts to collect an alleged debt from Mr. Crouch as alleged in this complaint.

19.     Mr. Guzman directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Mr. Crouch that are described in this complaint.

20.     Defendant Marco D. McKithen, also known as Marco Demone McKithen, is a natural person, age 31, purportedly residing at 2760 NW 15th Court, Fort Lauderdale, Florida 33311-5160. Mr. McKithen also has claimed to reside at 208 Wimbledon Lake Drive, Plantation, Florida 33324-2412. Mr. McKithen previously resided in and around Buffalo, New York. Mr. McKithen is an owner, officer, manager, employee and agent of Empire. Mr. McKithen uses the email address marco.mckithen@gmail.com and the telephone number 716-313-6005 to conduct his unlawful debt collection scam. Mr. McKithen uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. McKithen regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr. McKithen is a "debt collector" as the term is defined and used in the FDCPA. Mr. McKithen is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, Mr. McKithen is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

21.     Mr. McKithen claims to be a member of the United States Navy Reserve. Mr.

9

McKithen's participate in the unlawful scheme described in this lawsuit violates multiple sections of the Uniform Code of Military Justice. Mr. McKithen claims to be a student at Robert Morris, where he currently is enrolled in a public speaking course, CSCM1030. Mr. McKithen has posted videos of himself practicing his speaking ability on www.youtube.com. Mr. McKithen's voice in the YouTube videos matches the voice of the Empire collector who uses the alias name of "Philip Johnson."

22.     Mr. McKithen claims that when he was residing in Buffalo, New York, he was the "Chief Operating Officer" for a collection agency named Northeast Receivables Management, LLC, a New York limited liability company, formed on or about October 3, 2014. The internet website for the Better Business Bureau for Upstate New York contains numerous consumer complaints regarding the company, detailing the same unlawful debt collection tactics that are described in this complaint. The BBB, on a scale of A to F, gives the company a rating of "F."

23.     Mr. McKithen previously owned and operated Mpire Receivables Management LLC, a Florida limited liability company, formed on or about March 30, 2015, and that engaged in the same unlawful debt collection practices that are described in this complaint. According to the State of Florida, the company is inactive for failure to file required documents.

24.     In December of 2016, Mr. McKithen ran an advertisement on the internet website, www.uk.jobs68.com, stating: "Looking for full-time IT Technician. Must have experience in setting up call centers and large offices. We are looking to grow a massive company at our Pompano Beach location. Competitive pay for full or part-time positions. I am scheduling interviews for immediate hire. Please send resumé to Marco.McKithen@gmail.com and contact

me at 716-313-6005."

25.    Mr. McKithen (a) created the collection policies and procedures used by Empire

and United, and their employees and agents, in connection with their common efforts to collect

consumer debts, (b) managed or otherwise controlled the daily collection operations of Empire,

(c) oversaw the application of the collection policies and procedures used by Empire and its

employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by

Empire and United, and their employees and agents to collect debts from consumers, including

the tactics and scripts that were used to attempt to collect an alleged debt from Mr. Crouch as

alleged in this complaint, (e) ratified the unlawful debt collection practices and procedures used

by Empire and United, and their employees and agents in connection with their common efforts

to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the

unlawful debt collection practices used by Empire and United, and their employees and agents in

attempts to collect an alleged debt from Mr. Crouch as alleged in this complaint.

26.    Mr. McKithen directly and indirectly participated in the unlawful debt collection

practices to collect an alleged debt from Mr. Crouch that are described in this complaint.

27.    On October 28, 2016, Mr. McKithen filed for Chapter 13 Bankruptcy in the

United States Bankruptcy Court for the Western District of New York, Case No. 1-16-12207-

MJK. On September 15, 2017, the court dismissed Mr. McKithen's case because Mr. McKithen

failed to make payments as required by his bankruptcy plan.

28.    Defendant United Asset Management Group LLC ("United") is an active New

York limited liability company, formed on or about July 31, 2015, and purportedly doing

business at 1675 Niagara Street, Suite 9, Buffalo, New York 14207-3107. The United business

11

telephone number is 716-418-6122, which is registered to defendant Samuel P. DiPalma Jr. United is owned and operated by Mr. DiPalma. United uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. United regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. United is a "debt collector" as the term is defined and used in the FDCPA. United is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, United is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

29.     United directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Mr. Crouch that are described in this complaint.

30.     Defendant Samuel P. DiPalma Jr., age 36, is a natural person, purportedly residing at 323 Cornwall Avenue, Tonawanda, New York 14150-7039, or perhaps 62 East Hazeltine Avenue, Kenmore, New York 14217-2706. Mr. DiPalma is an owner, officer, member, manager, employee and agent of United. Mr. DiPalma uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. DiPalma regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr. DiPalma is a "debt collector" as the term is defined and used in the FDCPA. Mr. DiPalma is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, Mr. DiPalma is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

31.     Mr. DiPalma (a) created the collection policies and procedures used by Empire and United, and their employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of United,

12

(c) oversaw the application of the collection policies and procedures used by United and its employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by Empire and United, and their employees and agents to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Mr. Crouch as alleged in this complaint, (e) ratified the unlawful debt collection practices and procedures used by Empire and United, and their employees and agents in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by Empire and United, and their employees and agents in attempts to collect an alleged debt from Mr. Crouch as alleged in this complaint.

32.     Mr. DiPalma directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Mr. Crouch that are described in this complaint.

33.     All defendants are intricately bound together and combine their efforts in a joint and common enterprise and use concerted attempts to collect debts allegedly owed by consumers throughout the United States. Defendants operate collectively and together, in such a way that they are collecting debts for the benefit of each other, and making each defendant jointly and severally for the unlawful acts of each defendant.

34.     An entity that itself meets the definition of debt collector is liable for the unlawful collection activities carried out by another debt collector on its behalf. *See, e.g., Pollice v. National Tax Funding, L.P.,* 225 F.3d 379, 404-06 (3d Cir.2000); *Janetos v. Fulton Friedman & Gullace, LLP,* 825 F.3d 317, 325-26 (7th Cir.2016); *Fox v. Citicorp Credit Services, Inc.,* 15 F.3d 1507, 1516 (9th Cir.1994); *Wadlington v. Credit Acceptance Corp.,* 76 F.3d 103, 108 (6th Cir.1996); *Verburg v. Weltman, Weinberg & Reis Co., LPA et al.,* No. 1:13-cv-1328, 2016 WL

1273349, *7-8 (W.D. Mich. Mar. 28, 2016).

35.    A shareholder, owner, officer, member, manager, employee or agent of a corporate debt collector can be held liable for violating the FDCPA, without piercing the corporate veil, by being directly involved in the day-to-day operation of the company, including the training and managing of employees, reviewing or supervising the review of accounts, materially participating in the activities of the company, supervising collection activities, overseeing compliance with applicable collection laws, ratifying unlawful acts, and the like, for the reason that each such individual is himself a "debt collector" within the statutory definition, namely, each is a "person" in a business, "the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). *See Kistner v. Law Offices of Michael P. Margelefsky, LLC,* 518 F.3d 433, 435-438 (6th Cir. 2008); *Russell v. Goldman Roth Acquisitions, LLC,* 847 F.Supp.2d 994, 1004-06 (W.D.Mich. 2012).

## IV.    Facts

36.    Defendants claim that on or about February 8, 2013, plaintiff Mark Crouch borrowed $480.00 from an entity named CashNet USA ("CashNet"), in what is commonly known as a "payday loan." Mr. Crouch allegedly borrowed the money at an annual percentage rate that exceeded three-hundred and fifty percent. Any money borrowed by Mr. Crouch was used by Mr. Crouch to purchase goods or services for personal, family and household purposes.

37.    Mr. Crouch allegedly failed to repay the debt and the account allegedly became delinquent.

38.    In fact, Mr. Crouch has never borrowed any money from CashNet, which was

14

confirmed by Mr. Crouch in a telephone call to CashNet on October 9, 2017, and which was
memorialized in an email dated October 9, 2017 from CashNet to Mr. Crouch. A copy of the
email is attached hereto as Exhibit A.

39.     On or about October 4, 2017, defendants placed a call to Mr. Crouch's cellular
telephone and left the following computer-generated, pre-recorded message on Mr. Crouch's
voice mail: "Hello, I'm looking to speak with Mark Crouch. This is Linda Lawson with ADC. If
this is Mark Crouch, please press 1 now or hold for message. We're calling in regards to
fraudulent activity associated with your bank account and social security number. If we do not
hear from you, we will be marking your file as unresponsive and your paperwork will be
forwarded out to your county for further processing. Our office number is 877-350-5022. You
have now been legally notified. We wish you the best of luck."

40.     On or about October 6, 2017, defendants placed multiple calls to Mr. Crouch's
cellular telephone and left additional messages for Mr. Crouch to contact defendants at 877-350-
5022 or risk being prosecuted for fraud.

41.     On or about October 6, 2017, Mr. Crouch placed a return telephone call to
defendants at 877-350-502. The call was answered by defendants' employee and agent who
stated that her name was Amanda Fields at extension 105, with "Alternative Dispute Center."
Defendants' employee and agent made the following representations regarding Mr. Crouch:

        a.  This is in reference to the loan that was extended out to you from CashNet USA
            back around April 8th of 2013 for $480.00. . . This matter was sent out to several
            collection agencies from May 7th, 2013, but with the exhausted effort, you were
            marked down as evasive and noncompliant. Right now, the client is trying to seek

15

full restitution for the payment of $680.00 that is currently pending before they take this into court.

b.   The date [of the loan] was February 8, 2013 and the charge-off date due to nonpayment was May 7, 2013.

c.   The original amount that you owed was $480.00. I was going to offer you the original amount of the $480.00, I was just going to take off the late fee and the interest rate that brought it up to $680 . . . but if you can't take that settlement offer you'd have to pay the $680.00 and I'd break it down into multiple increments.

d.   They no longer provide us with the account number. They just provided us with the amount, the charge-off date and the date that it opened, and the information of the individual that seeked [sic] out this loan.

e.   You don't need to know your account number, you have enough info to make that decision whether you want to get the matter resolved, right now, once we contact the consumer, because that's the reason why the Case Manager is giving you a call to see what is the final decision of this case.

f.   If you can't come up with money to pay us, we take this into a court setting. That's why I'll be able to try to offer you a settlement offer as much as I can before they take this into a court setting. Because if you do take this into a court setting, they're going to ask you to try to pay three to four times more of something that you probably won't even have to pay or that you probably would have been able to pay some other bills with.

16

g.   We have a complaint here in our offices for malicious intent to defraud a financial

institution. We want to advise you that the calls are being recorded for state and

federal regulations.

h.   We are representing CashNet USA due to the fact that this matter was sent out to

several collection agencies. They are trying to get this litigated before they take

this into court, so we do make the consumer aware.

i.   We're supposed to give you at least thirty days to resolve this matter. Once we

make contact with the consumer the time starts running. So by the time the time

runs out and you don't make any restitution, we go ahead and file the complaint.

But if you're stating that you are trying to resolve this matter, we'll try to help

you the best way that we can to make sure the matter doesn't go into a court

setting.

42.     On October 6, 2017, for the sole purpose of identifying the entities who had stolen

or acquired Mr. Crouch's stolen private personal and financial information and used that

information to contact Mr. Crouch and threaten him with prosecution and other adverse

consequences in efforts to extort the payment of money from Mr. Crouch on a non-existent

account and non-existent debt, Mr. Crouch paid $100.00 to defendants by debit card from an

account with Chase Bank. According to Chase Bank, the payment was processed as a "POS

DEBIT" transaction by defendant United Asset Management Group LLC, with a contact

telephone number of 716-418-6122, which is a cellular telephone number registered to defendant

Samuel P. DiPalma Jr.

43.     On October 6, 2016, defendants sent an email to Mr. Crouch from

17

info@alternativedcenter.com. Attached to the email was a letter dated October 6, 2017, on the letterhead of "Alternative Dispute Center," in Pompano Beach, Florida 33064, 877-350-5022, and signed by "Philip Johnson, Director of Operations," and referencing an internet website www.alternativedcenter.com. The letter stated that Mr. Crouch owed a "Current Balance" of $680.00 to the "Current Creditor," Alternative Dispute Center, on CashNet USA "Account Number 004134," also known as "Case Number 109842." The letter stated: "Your billing statement will show our processor's information as United Asset Management Group. A copy of the email and letter are attached hereto as Exhibit A.

44.     United and Mr. DiPalma processed the payment made by Mr. Crouch to Empire, with actual knowledge that Empire, Mr. Guzman and Mr. McKithen, and their employees and agents, regularly and routinely used the unlawful debt collection practice to coerce and extort the payment of money from consumers on stolen and non-existent accounts. United and Mr. DiPalma have knowingly continued to process the payment of money obtained by unlawful means by Empire, Mr. Guzman, Mr. McKithen, as well as numerous other entities running variations of the same scam that is described in this lawsuit.

45.     In fact, Mr. Crouch has never borrowed any money from CashNet, which was confirmed by Mr. Crouch in a telephone conversation with CashNet on October 9, 2017, and which was memorialized in an email dated October 9, 2017, sent from CashNet to Mr. Crouch. A copy of the email is attached hereto as Exhibit B.

46.     The above-described threats and representations made by defendants and their employees and agents were false and part of a scripted and unlawful debt collection practice that is ongoing and is currently being perpetrated by defendants to extort the payment of money from

18

thousands of consumers across the country through false threats, intimidation, and unlawful harassment, frequently on debts that are not owed, and using unlawfully obtained account and personal information.

47.     Defendants and their employees and agents failed to meaningfully identify themselves and their companies.

48.     Defendants and their employees and agents falsely represented and falsely implied that Mr. Crouch had borrowed money from CashNet.

49.     Defendants and their employees and agents falsely represented and falsely implied that Mr. Crouch owed money on a fake CashNet account.

50.     Defendants and their employees and agents falsely represented and falsely implied that defendants were the current owners of Mr. Crouch's fake CashNet account.

51.     Defendants and their employees and agents falsely represented and falsely implied that Mr. Crouch owed money to defendants.

52.     Defendants and their employees and agents falsely represented and falsely implied that Mr. Crouch owed $680.00 to defendants.

53.     Defendants and their employees and agents falsely represented and falsely implied that "fraudulent activity" had been "associated" with Mr. Crouch's "bank account and social security number."

54.     Defendants and their employees and agents falsely represented and falsely implied that if Mr. Crouch did not contact defendants, then "paperwork would be forwarded to [Kent County, Michigan] for further processing."

55.     Defendants and their employees and agents falsely represented and falsely

implied that a lawsuit had been filed, or was going to be filed, against Mr. Crouch.

56.     Defendants and their employees and agents falsely represented and falsely implied that defendants had filed, or were going to file, a lawsuit against Mr. Crouch.

57.     Defendants and their employees and agents falsely represented and falsely implied that Mr. Crouch had committed a crime.

58.     Defendants and their employees and agents falsely represented and falsely implied that Mr. Crouch was going to be criminally prosecuted.

59.     Defendants and their employees and agents falsely represented and falsely implied that if Mr. Crouch did not agree to pay money to defendants, then the fake debt of $480.00 would quadruple to $1,920.00.

60.     Defendants and their employees and agents falsely represented and falsely implied that defendants had or were about to file a criminal complaint against Mr. Crouch for malicious intent to defraud a financial institution.

61.     Defendants and their employees and agents falsely represented and falsely implied that defendants were representing CashNet.

62.     Defendants and their employees and agents falsely represented and falsely implied that defendants have a legal department.

63.     Defendants and their employees and agents falsely represented and falsely implied that lawyers were involved in the efforts to collect the alleged debt.

64.     Defendants and their employees and agents falsely represented and falsely implied that lawyers would become involved in the efforts to collect the alleged debt.

65.     Defendants did not intend to file a lawsuit against Mr. Crouch in any Michigan

court in efforts to collect the alleged debt. In fact, no defendant has ever filed any lawsuit in any Michigan court to collect any debt from any person.

66.     Defendants and their employees attempted to collect from Mr. Crouch a debt that Mr. Crouch does not owe.

67.     Defendants and their employees attempted to collect from Mr. Crouch a debt that defendants and their employees and agents have no legal right to collect.

68.     The FDCPA states that it is unlawful for a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of any debt. 15 U.S.C. § 1692d.

69.     The FDCPA states that it is unlawful for a debt collector to use criminal means to harm the reputation of any person. 15 U.S.C. § 1692d(1).

70.     The FDCPA states that it is unlawful for a debt collector to place a telephone call without meaningful disclosure of the caller's identity. 15 U.S.C. § 1692d(6).

71.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that the debt collector is affiliated with the United States or any State. 15 U.S.C. § 1692e(1)

72.     The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the character, amount, or legal status of any debt. 15 U.S.C. § 1692e(2)(A).

73.     The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the compensation which may be lawfully received by any debt collector for the collection of any debt. 15 U.S.C. § 1692e(2)(B).

74.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that any individual is an attorney or that any communication is from any attorney. 15 U.S.C. § 1692e(3).

75.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action. 15 U.S.C. § 1692e(4).

76.     The FDCPA states that it is unlawful for a debt collector to threaten to take any action that cannot legally be taken or that is not intended to be taken. 15 U.S.C. § 1692e(5).

77.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to lose any claim or defense to the payment of the debt. 15 U.S.C. § 1692e(6)(A).

78.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to become subject to any practice prohibited by the FDCPA. 15 U.S.C. § 1692e(6)(B).

79.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that the consumer committed a crime or other conduct in order to disgrace the consumer. 15 U.S.C. § 1692e(7).

80.     The FDCPA states that it is unlawful for a debt collector to communicate to any person credit information which is known or which should be known to be false. 15 U.S.C. § 1692e(8).

81.    The FDCPA states that it is unlawful for a debt collector to use any false representation or deceptive means to collect or attempt to collect any debt. 15 U.S.C. § 1692e(10).

82.    The FDCPA states that it is unlawful for a debt collector to communicate in a communication with a consumer to fail to disclose that the communication is from a debt collector. 15 U.S.C. § 1692e(11).

83.    The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that documents are legal process. 15 U.S.C. § 1692e(13).

84.    The FDCPA states that it is unlawful for a debt collector to use any business, company, or organization name other than the true name of the debt collector's business, company, or organization. 15 U.S.C. § 1692e(14).

85.    The FDCPA states that it is unlawful for a debt collector to use unfair or unconscionable means to collect or attempt to collect any debt. 15 U.S.C. § 1692f.

86.    The FDCPA states that it is unlawful for a debt collector to collect any amount unless such amount is expressly authorized by the agreement creating the debt or permitted by law. 15 U.S.C. § 1692f(1).

87.    Defendants and their employees and agents have violated the FDCPA, 15 U.S.C. §§ 1692d, 1692d(1) and (6), 1692e, 1692e(1), (2)(A), (2)(B), (3), (4), (5), (6)(A), (6)(B), (7), (8), (10), (11), (13) and (14), and 1692f and 169f(1).

88.    Defendants and their employees and agents falsely represented and falsely implied that Mr. Crouch had committed a crime. Mr. Crouch did not commit a crime under Michigan law because Mr. Crouch did not have an account with CashNet. Moreover, Mr. Crouch

23

did not commit a crime under Michigan law because the Michigan Deferred Presentment Service

Transactions Act, which regulates payday lending in Michigan, expressly states that the borrower

in a payday loan transaction "is not subject to any criminal penalty in the event the drawer's

check is dishonored." M.C.L. § 487.2158(4).

89.     Moreover, M.C.L. § 750.213 states in pertinent part:

Sec. 213. MALICIOUS THREATS TO EXTORT MONEY – Any person who shall,

either orally or by a written or printed communication, maliciously threaten to accuse

another of any crime or offense . . . with intent to extort money or any pecuniary

advantage whatever . . . shall be guilty of a felony, punishable by imprisonment in the

state prison not more than 20 years or by a fine of not more than 10,000 dollars.

Collection of a valid, enforceable debt does not permit malicious threats of injury if

payment is not made. *People v. Maranian*, 359 Mich. 361 (1960).

90.     Defendants and their employees and agents attempted to criminally extort money

from Mr. Crouch and violated M.C.L. § 750.213.

91.     Defendants and their employees and agents failed to timely send to Mr. Crouch a

notice containing the information required by 15 U.S.C. § 1692g(a).

92.     In connection with efforts to collect an alleged debt from Mr. Crouch, defendants

obtained personal information regarding Mr. Crouch from a subscription-based internet database

(www.accurint.com) ("Accurint") operated and maintained by LexisNexis Risk Management,

Inc.

93.     Alternatively, in connection with efforts to collect an alleged debt from Mr.

Crouch, defendants obtained personal information regarding Mr. Crouch from a subscription-

24

based internet database (www.tlo.com) ("TLO") operated and maintained by TransUnion Risk and Alternative Data Solutions, Inc.

94.     The Accurint database is derived in part from non-public motor vehicle records. Accordingly, the Drivers Privacy Protection Act applies to searches made through Accurint. Subscribers to Accurint must sign an application stating that the subscriber will comply with the DPPA. Further, every time a subscriber logs on to Accurint, the subscriber is confronted with a screen that requires the subscriber to affirmatively state the permissible purpose under the DPPA for which the subscriber is requesting the personal information. A hyper-link at the bottom of the screen takes the subscriber to the actual, full text of the DPPA.

95.     The TLO database is derived in part from non-public motor vehicle records. Accordingly, the Drivers Privacy Protection Act applies to searches made through TLO. Subscribers to TLO must sign an application stating that the subscriber will comply with the DPPA. Further, every time a subscriber logs on to TLO, the subscriber is confronted with a screen that requires the subscriber to affirmatively state the permissible purpose under the DPPA for which the subscriber is requesting the personal information. A hyper-link at the bottom of the screen takes the subscriber to the actual, full text of the DPPA.

96.     The DPPA was enacted in response to growing concerns over the ease with which stalkers and other criminals could obtain personal information from state departments of motor vehicles. *Reno v. Condon*, 528 U.S. 141, 143–44, 120 S.Ct. 666, 145 L.Ed.2d 587 (2000).

97.     The DPPA states:

    a.  Procurement for unlawful purpose. – It shall be unlawful for any person
        knowingly to obtain or disclose personal information, from a motor vehicle
        record, for any use not permitted under section 2721(b) of this title.

False representation. – It shall be unlawful for any person to make false representation to obtain any personal information from an individual's motor vehicle record.

18 U.S.C. § 2722.

98.     The DPPA also states:

"personal information" means information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code) [and] telephone number . . . .

18 U.S.C. § 2725(3).

99.     The DPPA also states:

A person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter, shall be liable to the individual to whom the information pertains, who may bring a civil action in a United States district court.

18 U.S.C. § 2724(a).

100.    The DPPA enumerates the only "permissible uses" for which personal information may be obtained. 18 U.S.C. § 2721(b).

101.    Defendants did not have a "permissible use" under the DPPA to obtain, disclose or use personal information regarding Mr. Crouch.

102.    Defendants used Accurint or TLO to obtain, disclose or use personal information regarding Mr. Crouch.

103.    Defendants made a false representation to Accurint or TLO to obtain personal information regarding Mr. Crouch that was derived from Mr. Crouch's motor vehicle record.

104.    Alternatively, the entity that obtained Mr. Crouch's personal information from Accurint or TLO and disclosed the personal information to defendants, made a false

26

representation to Accurint or TLO to obtain personal information regarding Mr. Crouch that was derived from Mr. Crouch's motor vehicle record.

105. It is a crime to knowingly violate the DPPA. 18 U.S.C. § 2723.

106. Defendants knowingly obtained, disclosed and used Mr. Crouch's personal information, from a motor vehicle record, for a purpose not permitted under the DPPA, and with willful or reckless disregard for the law.

107. No defendant had a "permissible use" as the phrase is defined in the DPPA to obtain, use or disclose Mr. Crouch's personal information obtained from Accurint or TLO.

108. No defendant had Mr. Crouch's consent, permission, authorization or waiver to obtain Mr. Crouch's personal information from Accurint or TLO.

109. A civil action under the DPPA may be commenced within four years after the cause of action accrues. 28 U.S.C. § 1658(a); *Rasmusson v. Chisago County,* , 991 F.Supp.2d 1065, 1079 (D. Minn. 2014).

110. The DPPA imposes vicarious liability on principals for the acts of the actions of their agents who act with apparent authority. *Margan v. Niles,* 250 F.Supp.2d 63, 77 (N.D.N.Y. 2003).

111. Each defendant and each defendant's employees, managers, owners, agents, affiliates and co-conspirators had knowledge of, approved of, and ratified the use of the unlawful debt collection practices that are described in this complaint.

112. Defendants and their employees, managers, owners, agents, affiliates and co-conspirators each have intentionally and wilfully violated the FDCPA, MRCPA and MOC.

113. The FDCPA states in part, "It is the purpose of this subchapter to eliminate

27

abusive debt collection practices by debt collectors" and "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." 15 U.S.C. § 1692(e).

114. Defendants and their employees, managers, owners, agents, affiliates and co-conspirators, to increase their business and profits, have knowingly chosen to use debt collection practices that violate the FDCPA and Michigan law, to the competitive disadvantage of those debt collectors who have chosen to abide by the law and refrain from using those same unlawful debt collection practices.

115. As an actual and proximate result of the acts and omissions of defendants and their employees, managers, owners, agents, affiliates and co-conspirators, plaintiff has suffered actual damages and injury, including but not limited to, monetary loss, fear, stress, mental anguish, emotional stress, acute embarrassment, anxiety, loss of sleep, and suffering, for which she should be compensated in an amount to be established by jury and at trial.

## V.    Claims for Relief

### Count 1 – Fair Debt Collection Practices Act

114. Plaintiff incorporates the foregoing paragraphs by reference.

115. Each defendant has violated the FDCPA. Each defendant's violations of the FDCPA include, but are not necessarily limited to, the following:

> a)    Defendants violated 15 U.S.C. § 1692d by engaging in conduct, the natural0 consequence of which is to harass, oppress, or abuse a person in connection with the collection of a debt;
>
> b)    Defendants violated 15 U.S.C. § 1692e by using false, deceptive and

28

misleading representations and means in connection with the collection or attempted collection of a debt;

c)   Defendants violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect or attempt to collect a debt from plaintiff; and

d)   Defendants violated 15 U.S.C. § 1692g.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)   Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

b)   Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c)   Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and

d)   Such further relief as the court deems just and proper.

### Count 2 – Drivers Privacy Protection Act

116.   Plaintiff incorporates the foregoing paragraphs by reference.

117.   Each defendant has violated the DPPA, 18 U.S.C. § 2722(a) and (b).

**Wherefore,** plaintiff seeks judgment against defendants for:

a)   Actual damages, but not less than liquidated damages in the amount of $2,500.00, pursuant to 18 U.S.C. § 2724(b)(1);

b)   Punitive damages pursuant to18 U.S.C. § 2724(b)(2);

c)   Reasonable costs and attorneys' fees pursuant to18 U.S.C. § 2724(b)(3);

d)   An injunction prohibiting defendants from further obtaining plaintiff's personal information, pursuant to 18 U.S.C. § 2724(b)(4);

29

e)      An order requiring defendants to provide plaintiff with the original and all
        copies of any and all documents of any kind that contain any of plaintiff's
        personal information, pursuant to 18 U.S.C. § 2724(b)(4);

f)      An injunction prohibiting defendants from disseminating plaintiff's
        personal information to any other entity, pursuant to 18 U.S.C. §
        2724(b)(4).

g)      An order requiring defendants to provide plaintiff with the original of all
        documents pursuant to which defendants obtained plaintiff's stolen
        account information, so that plaintiff may take steps to determine the
        identity of all entities that have had possession of her stolen account
        information and thereby enable plaintiff to pursue those entities in efforts
        to protect plaintiff's credit identify from being further compromised and
        harmed.

### Count 3 – Michigan Regulation of Collection Practices Act

118.    Plaintiff incorporates the foregoing paragraphs by reference.

119.    Each defendant has violated the MRCPA. Each defendant's violations of the
MRCPA include, but are not necessarily limited to, the following:

a)      Defendants violated M.C.L. § 445.252(a) by communicating with a debtor
        in a misleading or deceptive matter, including simulated judicial process;

b)      Defendants violated M.C.L. § 445.252(e) by making an inaccurate,
        misleading, untrue, or deceptive statement or claim in a communication to
        collect a debt;

30

c)   Defendants violated M.C.L. § 445.252(e) by concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt;

d)   Defendants violated M.C.L. § 445.252(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened, (ii) the legal rights of a creditor or debtor, and (iii) that the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the seizure, garnishment, or sale of the debtor's property;

e)   Defendants violated M.C.L. § 445.252(g) by communicating with a debtor without accurately disclosing the caller's identity;

f)   Defendants violated M.C.L. § 445.252(n) by using a harassing, oppressive, or abusive method to collect a debt; and

g)   Defendants violated M.C.L. § 445.252(q) by failing to implement a procedure designed to prevent a violation by an employee.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)   Actual damages pursuant to M.C.L. § 445.257(2);

b)   Treble the actual damages pursuant to M.C.L. § 445.257(2);

c)   Statutory damages pursuant to M.C.L. § 445.257(2);

d)   Reasonable attorney's fees and court costs pursuant to M.C.L. § 445.257(2); and

e)   Equitable relief pursuant to M.C.L. § 445.257(1).

## Count 4 – Michigan Occupational Code

120.    Plaintiff incorporates the foregoing paragraphs by reference.

121.    Each defendant has violated the MOC. Each defendant's violations of the MOC include, but are not necessarily limited to, the following:

a)    Defendants violated M.C.L. § 339.915(a) by communicating with a debtor in a misleading or deceptive matter, including simulated judicial process;

b)    Defendants violated M.C.L. § 339.915(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

c)    Defendants violated M.C.L. § 339.915(e) by concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt;

d)    Defendants violated M.C.L. § 339.915(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened; (ii) the legal rights of a creditor or debtor; and (iii) that the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the seizure, garnishment, attachment or sale of the debtor's property;

e)    Defendants violated M.C.L. § 339.915(g) by communicating with a debtor without accurately disclosing the caller's identity;

f)    Defendants violated M.C.L. § 339.915(n) by using a harassing, oppressive, or abusive method to collect a debt;

32

g)     Defendants violated M.C.L. § 339.915(q) by failing to implement a procedure designed to prevent a violation by an employee; and

h)     Defendants violated M.C.L. § 339.918.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)     Actual damages pursuant to M.C.L. § 339.916;

b)     Treble the actual damages pursuant to M.C.L. § 339.916;

c)     Statutory damages pursuant to M.C.L. § 339.916;

d)     Equitable relief pursuant to M.C.L. § 339.916; and

e)     Reasonable attorney's fees and court costs pursuant to M.C.L. § 339.916(2).

### Count 5 – Invasion of Privacy

122.    Plaintiff incorporates the foregoing paragraphs by reference.

123.    Defendants' acts and omissions were undertaken willfully, maliciously, intentionally, knowingly, and in gross or reckless disregard for plaintiff's rights.

124.    Defendants' acts and omissions were extreme and outrageous.

125.    Defendants' acts and omissions have caused plaintiff's personal and financial information to be peddled around the country to con men and criminals, exposing plaintiff to repeated and future harm, credit identity theft, and other invasions of his privacy.

126.    As an actual and proximate result of defendants' invasion of plaintiff's right to privacy, plaintiff has suffered, and will continue to suffer, actual damages for which he should be compensated.

**Wherefore**, plaintiff seeks judgment against defendants for:

33

a)   Actual damages;

b)   Exemplary damages;

c)   Equitable relief, including an injunction, enjoining defendants from communicating plaintiff's personal information to any entity;

d)   Costs and reasonable attorney's fees; and

e)   Such further relief as the court deems just and proper.

## Demand for Trial by Jury

Plaintiff demands trial by jury.

Dated: December 18, 2017

/s/ Phillip C. Rogers
Phillip C. Rogers (P34356)
Kevin J. Rogers (P81303)
Attorneys for Plaintiff
6140 28th Street SE, Suite 115
Grand Rapids, Michigan 49546-6938
(616) 776-1176
ConsumerLawyer@aol.com